Roberto LUGO, Appellant,

v.

Glenn PAULSEN, individually and in his capacity as Director of the New Jersey Division of Motor Vehicles; N.J. Automobile Insurance Surcharge and Collection; New Jersey Automobile Full Insurance Underwriting Association; and W. Cary Edwards, individually and in his capacity as Attorney General of New Jersey.

No. 89–5090.

United States Court of Appeals, Third Circuit.

Argued June 27, 1989.

Decided Sept. 28, 1989.

Rehearing and Rehearing In Banc Denied Oct. 26, 1989.

Neil J. Fogarty (argued), Hudson County Legal Services Corp., Jersey City, N.J., for appellant.

Sherrie L. Gibble (argued), Felice J. Weiner, Office of Atty. Gen. of N.J., Trenton, N.J., for appellee State of N.J., Div. of Motor Vehicles, Glenn Paulsen, Director, DMV.

Michael E. Buckley, Francis & Berry, Morristown, N.J., for appellee New Jersey Auto. Full Ins. Underwriting Assoc.

Before MANSMANN, SCIRICA and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Circuit Judge.

The issue before us is whether an insurance surcharge, levied by the State of New Jersey on persons convicted of driving while under the influence of intoxicating liquor, may be discharged under Chapter 7 of the Bankruptcy Code. The district court determined that the surcharge qualified as "debt," but fell within the exception to discharge in 11 U.S.C. § 523(a)(9) for debts arising from judgments arising out of the operation of a vehicle while legally intoxicated. We will affirm.

### I.

On June 5, 1985, Roberto Lugo was convicted in the Municipal Court of East Rutherford, New Jersey of driving while under the influence of intoxicating liquor in violation of N.J.Stat.Ann. § 39:4–50(a)(West 1985). The Municipal Court imposed a $250 fine, costs, and a $100 surcharge. Lugo complied with the order. In addition, Lugo's driver's license was revoked for six months and he was required to attend a 12–hour educational program.

On January 12, 1986, the New Jersey Division of Motor Vehicles (DMV) billed Lugo $3000, payable over three years, under the New Jersey Merit Rating Plan (N.J. Stat.Ann. § 17:29A–35(b)(2) (West 1985 & Supp.1989)),[1] which levies a surcharge on drivers convicted of driving under the influence of intoxicating liquor. Merit Rating Plan surcharges fund the New Jersey Automobile Full Insurance Underwriting

---

1. N.J.Stat.Ann. § 17:29A–35(b) provides in part:
   (b) (repealed)
   (2) Plan surcharges shall be levied for convictions under R.S. 39:4–50 [Operating under the influence of liquor or drugs] ... for violations occurring on or before January 1, 1983. Surcharges under this paragraph shall be levied annually for a three-year period, and shall not be less that $1000.00 per year for each of the first two convictions....

   If, upon written notification from the Division of Motor Vehicles, mailed to the last address of record with the division, a driver fails to pay a surcharge levied under this subsection, the license of the driver shall be suspended forthwith until the surcharge is paid to the Division of Motor Vehicles; ...
   *Id.* § 17:29A–35(b)(2) (West 1985), *as amended* § 17:29A–35(b)(2) (West Supp.1989).

Association (JUA),[2] an unincorporated, non-profit association of insurers licensed to provide automobile insurance in New Jersey. The DMV collects the surcharges, remitting at least 90% to the JUA, and retaining up to 10% for administrative expenses. The Merit Rating Plan provides that if a driver fails to pay the surcharge, the driver's license "shall be revoked forthwith until the surcharge is paid to the Division of Motor Vehicles." N.J.Stat.Ann. § 17:29A–35(b)(2).

Accordingly, Lugo's surcharge bill included a "Notice of Proposed Suspension," which stated:

> This bill is a notice of proposed suspension of your driving privileges pursuant to P.L.1983 C.65; N.J.S.A. 17:29A–33 et seq. and N.J.S.A. 39:5–30. Your payment must be received within 30 days of the bill date. Failure to pay by Feb. 11, 1986 will result in the suspension of your driver's license until full payment is made.

Lugo failed to pay the $3000 surcharge. On July 30, 1986, he filed a petition under Chapter 7 of the Bankruptcy Code, listing in his debt schedule the $3000 surcharge owed to the JUA and listing the DMV and its subdivision, Automobile Insurance Surcharge and Collections, as scheduled creditors. After learning of Lugo's bankruptcy petition, the DMV restored his driving privileges in October, 1986. On December 12, 1986, Lugo received his discharge in bankruptcy. Notice of discharge was sent to all listed creditors by the Bankruptcy Court.

Following discharge, Lugo received another surcharge bill from the DMV, which again included a notice of proposed suspension of driving privileges for failure to pay the surcharge. In response to inquiry by Lugo's attorney, a representative of the DMV stated that Lugo's driver's license would be suspended if he did not pay the surcharge notwithstanding his discharge in bankruptcy.

Consequently, on February 19, 1988, Lugo re-opened his Chapter 7 bankruptcy petition, and filed an adversary proceeding seeking to have the surcharge discharged as a pre-petition debt. The Bankruptcy Court reviewed his complaint, and, on cross motions for summary judgment, held that the surcharge was not a "debt" within the meaning of the Bankruptcy Code and therefore was not subject to discharge. *Lugo v. Paulsen,* No. 88–0127, slip op. (Bankr.D.N.J.1988).

On appeal, the district court found that the surcharge was a "debt" within the meaning of the Bankruptcy Code. The district court held, however, that the surcharge was non-dischargeable under the exception to discharge in § 523(a)(9) of the Bankruptcy Code, 11 U.S.C. § 523(a)(9)(Supp. V 1988). *Lugo v. Paulsen,* 94 B.R. 335, 340 (D.N.J.1989) This appeal followed.

## II.

We must first determine whether the Merit Rating Plan surcharge levied by the DMV is a pre-petition "debt" that may be discharged in Chapter 7 under 11 U.S.C. § 727(b) (1982).[3] Relying on *In re Graham,* 85 B.R. 713, 716 (Bankr.D.N.J.1988) (Merit Rating Plan surcharges characterized as "additional premium[s] payable for [ ] necessary insurance" rather than as pre-petition "debt"), the Bankruptcy Court found that the surcharge was not a pre-petition debt subject to discharge in a Chapter 7 proceeding. The Bankruptcy Court observed that the surcharges provided funding for a comprehensive legislative plan to furnish automobile insurance to

---

**2.** The JUA contracts with insurance companies to operate an insurance pool from which drivers may obtain automobile insurance if rejected elsewhere.

**3.** A discharge under Chapter 7, *inter alia:*
(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under

section 727 ..., whether or not such discharge is waived; [and]
(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; ....
11 U.S.C. § 524(a)(1) & (2) (Supp. V 1988).

persons unable to obtain insurance elsewhere and to help equalize policy rates based on individual driving records.[4] Under the New Jersey Automobile Insurance Reform Act, all surcharges are assessed and paid directly to the DMV and eventually to the JUA as insurer of the "at-risk" pool, rather than collected by insurance companies individually as had been customary prior to the Act. *See* New Jersey Automobile Insurance Reform Act of 1982, 1983 N.J. Laws 230, 231, *codified at* N.J. Stat.Ann. §§ 17:29A–33–17:30E–24 (West 1985 & Supp. 1989). Because the Merit Rating Plan surcharges are "infused directly into the auto insurance system," the Bankruptcy Court reasoned, the surcharge is an additional premium required for future liability insurance and, as such, it would not qualify as a debt incurred pre-petition.

▮ On this issue, the district court disagreed with the Bankruptcy Court, and held that the surcharge was properly characterized as a pre-petition debt under the Bankruptcy Code. We agree with the district court.

The Bankruptcy Code defines "debt" as a "liability on a claim," 11 U.S.C. § 101(11)(1982), and defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured...." 11 U.S.C. § 101(4)(A)(1982). The latter definition was designed to allow the broadest possible interpretation of "claim," as the Code "contemplates that all legal obligations of the debtor, no matter how remote or contingent, be able to be dealt with in bankruptcy" to permit the "broadest possible relief in the bankruptcy court." H.R.Rep. No. 595, 95th Cong., 1st Sess. 309 (1977); S.Rep. No. 989, 95th Cong., 2d Sess.

21 (1978), U.S.Code Cong. & Admin.News, pp. 5787, 5807, 5963, 6266. Courts have recognized Congress' intent to permit broad relief in bankruptcy and have followed its directive to interpret "claim" liberally. *See, e.g., Kelly v. Robinson,* 479 U.S. 36, 50 n. 12, 107 S.Ct. 353, 361 n. 12, 93 L.Ed.2d 216 (1986)(definition of "debt" broadly drafted); *In re Remington Rand Corp.,* 836 F.2d 825, 829 (3d Cir.1988) (Congress defined "claim" in broadest possible terms); *Matter of M. Frenville Co., Inc.,* 744 F.2d 332, 336 (3d Cir.1984)(Congress intended definition of claim to be "very broad"), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985); *In re Robinson,* 776 F.2d 30, 35 (2d Cir.1985) (discussing breadth of various courts' definition of "claim" in bankruptcy), *rev'd on other grounds, Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). Whether a claimant has a "right to payment" under § 101(4)(A) is dependent on state law, although in some instances "overriding federal policy would require us to consult federal law." *In re Remington Rand Corp,* 836 F.2d at 830. As noted in *Remington Rand,* "[r]eference to non-bankruptcy law is critical: unless state or federal law independently creates obligations, the bankruptcy court is not presented with a claim to either recognize or reject." *Id.* at 830.

Appellees urge us to adopt the finding of the Bankruptcy Court that the Merit Rating Plan surcharge was not a "debt" under § 101(11), claiming that these surcharges are post-petition "insurance payments." They argue that the State of New Jersey, in levying the surcharge, is not attempting to collect a pre-petition debt, but rather is relying on the debtor's pre-petition driving history to determine the cost of insuring the future operation of a motor vehicle by that person.[5] Appellees rely on *In re A.C.*

**4.** The preamble to the Act provides: "It is the intent and purpose of this act ... (c) to establish the New Jersey Merit Rating Plan for convictions of motor vehicle violations and an accident surcharge system for motor vehicles, based on the criteria set forth in this act; (d) to require that automobile insurance rates charged any insured shall not exceed average rates, as

determined in this act." *See* N.J.Stat.Ann. 17:29A–33.

**5.** Appellees concede in their brief that these surcharges are not penal in nature. *See Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986); *see also Clark v. New Jersey Division of Motor Vehicles,* 211 N.J.Super. 708, 710–11

*Williams Co.*, 51 B.R. 496 (Bankr.N.D.Ohio 1985), and *In re Primrose Bedspread Corp.*, 67 B.R. 659 (Bankr.D.N.J.1986), to suggest that the imposition of the surcharge is indistinguishable from an insurance company's reliance on a debtor's pre-petition driving record to determine the cost of future driving insurance.

In *In re A.C. Williams Co.*, a corporation emerging from a Chapter 11 reorganization [6] requested that the Bankruptcy Court enjoin the Ohio Bureau of Workers' Compensation from using the corporations' pre-petition claims experience in calculating its experience rating and the resulting premiums owed the Bureau. The court refused, holding that the Bureau, by relying on the employer's past claims experience, was not attempting to collect a pre-petition debt. 51 B.R. at 501. The court declined "to read the Code so broadly as to include the pre-petition claim experience within its definition of 'claim.'" *Id.* Similarly, in *In re Primrose Bedspread Corp.*, the Bankruptcy Court allowed the use of the corporation's pre-petition experience in determining the rate of its unemployment tax contributions. 67 B.R. at 660.

We find *In re A.C. Williams* and *In re Primrose Bedspread* inapposite. The imposition of the surcharge in this case did not result from evaluation of Lugo's pre-petition safety record and a subsequent determination of a premium rate by which Lugo may avail himself of automobile insurance post-petition. Indeed, Lugo has no need to avail himself of automobile insurance, because under New Jersey law, only owners of vehicles are required to have

insurance as a condition to lawful operation. *See In re Robert Bill*, 90 B.R. 651, 654–55 (1988). Lugo did not own an automobile at the time he was convicted of drunk driving, nor does he own one now. The Merit Rating Plan surcharge is imposed on a driver convicted under N.J.Stat. Ann. § 39:4–50 whether or not the driver owns the vehicle. Therefore, the Bankruptcy Court's characterization of the surcharge as an additional premium payable for "required liability insurance coverage in the future" is incorrect, as Lugo was not "required" to carry automobile insurance under New Jersey law. Because Lugo owns no automobile for which he must carry insurance, the district court properly observed that the term " '[s]urcharge' is a misnomer, since there is no premium to which the statutory payment is *added*." [7] *Lugo v. Paulsen*, 94 B.R. at 340. We agree and conclude that the Plan surcharge is not an "additional insurance premium."

Appellees also argue that the Plan surcharge is not a "debt" because it cannot be reduced to a money judgment and therefore does not constitute a "right to payment" under the definition of claim in 11 U.S.C. § 101(4)(A). [8] We agree with the district court, however, that although New Jersey may not reduce surcharge obligations to a money judgment as the method to enforce its statutory scheme, "the threat of a suspended driver's license provides appellees with ample means to enforce its right to payment." 94 B.R. at 340 n. 4. As we observed in *Miller v. Anckaitis*, 436 F.2d 115 (3d Cir.1970), "[a] combi-

(App.Div.1986) (Merit Rating Plan surcharges are "clearly remedial and civil," rather than punitive, in nature).

**6.** We note that *In re A.C. Williams Co.* and *In re Primrose Bedspread Corp.* were both cases in which the debtor principally argued that a debtor-in-possession in Chapter 11 should be treated as a "new entity" and therefore that the corporation's pre-petition experience should not be relied upon to determine workers' compensation or unemployment tax liabilities postpetition.

**7.** As additional support for its conclusion that the surcharge is not an insurance premium, the district court found that Lugo obtained no benefit from paying the $3000 surcharge, 94 B.R. at 340. Appellees challenge this statement on the

grounds that, under New Jersey law, Lugo would receive medical benefits if injured while driving a car insured in the state, regardless of whether he owned it. Whether Lugo would receive some benefit under New Jersey insurance laws, however, is not determinative of whether the surcharge should be characterized as an "insurance premium."

**8.** As we observed in *In re Remington Rand Corp.*, 836 F.2d at 830, and *Matter of Frenville Co., Inc.*, 744 F.2d at 336, the existence of a valid claim depends on: (1) whether the claimant possessed a right to payment; and (2) when that right arose.

nation of public and private policies have made use of an automobile an actual necessity for virtually everyone who must work for a living." *Id.* at 120. In light of the automobile's central economic role, suspension of a driver's license may serve as a more potent enforcement measure than a money judgment, especially in the case of a judgment-proof debtor. *See also In re Adams*, 106 B.R. 811, 823 (Bankr.D.N.J.1989) (enforceability of DMV's right to payment by suspension of driver's license sufficient under § 101(11)); *In re Brown*, 39 B.R. 820, 822 (Bankr.M.D.Tenn.1984) ("Debt" dischargeable in bankruptcy is not restricted to obligations incurred in consumer or business transactions but includes *all* obligations, however[ ] incurred."). In addition, requiring that a claim be reducible to a money judgment would conflict with the congressional mandate that "claim" be defined broadly. *See In re Remington Rand Corp.*, 836 F.2d at 829–30.

The decisions in *In re Villarie*, 648 F.2d 810, 812 (2d Cir.1981), and *In re Pellegrino*, 42 B.R. 129, 133 (Bankr.Conn.1984), cited by appellees, do not persuade us otherwise. The *Villarie* court held that an employee's pre-petition loan from his retirement fund did not constitute a "debt" dischargeable in bankruptcy because the fund had no means to enforce its right to payment. Instead, its available remedy was merely to offset the borrowed amounts against the employee's future benefits from the fund. In *Pellegrino*, the Bankruptcy Court addressed the question whether a criminal defendant's obligation under Connecticut law to make restitution to the crime victim gives rise to a "claim" by the victim in bankruptcy. The court found that no right to payment existed because "[u]nder the [Connecticut] penal code, a victim cannot enforce a court's order of restitution if the criminal defendant

fails to make payments to the [probation office]." [9] 42 B.R. at 132. Unlike the retirement fund in *Villarie* and the crime victims in *Pellegrino*, the DMV does have a method to enforce the surcharge obligation, that is, revocation of the driver's license.

Having determined that the surcharge is a "debt," we next consider whether the obligation to pay the surcharge arose pre-petition.[10] "While federal law controls which claims are cognizable under the Code, the threshold question of when a right to payment arises, absent overriding federal law, 'is to be determined by reference to state law.' " *Matter of M. Frenville Co. Inc.*, 744 F.2d at 337 (citing *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 161, 67 S.Ct. 237, 239, 91 L.Ed. 162 (1946)); *see also In re Remington Rand Corp*, 836 F.2d 825, 832 (3d Cir.1988). Under the New Jersey Merit Rating Plan, the DMV's right to payment arises when a driver is convicted under N.J.Stat.Ann. § 39:4–50 of driving under the influence of intoxicating liquor. Thus, the DMV's right to payment arose on the date of Lugo's conviction, which was prior to his filing for bankruptcy. We agree with the district court that the mere fact that the surcharge may be used to cover future costs does not convert it into a post-petition debt. *Accord In re Adams*, slip op. at 25–27 (DMV's right to payment accrued when debtor was convicted of violating offense covered by Merit Rating Plan; fact that right to payment deferred over three years irrelevant to determining accrual of claim cognizable in bankruptcy).

### III.

Our determination that the insurance surcharge is a pre-petition debt under the

**9.** Moreover, courts' reluctance to find that obligations to pay criminal restitution constitutes "debt" under the Bankruptcy Code rests on federalism grounds and on the notion that criminal judgments should not be dischargeable in bankruptcy. *See Kelly v. Robinson*, 479 U.S. at 49, 107 S.Ct. at 360–61 (recognizing state's interest in administering criminal justice system and expressing serious doubt whether Congress intended to make criminal penalties "debts" within meaning of Code given established state of

law that criminal judgments could not be discharged in bankruptcy). Merit Rating Plan surcharges are civil and remedial in nature, *see* note 4 *supra*, and therefore are not subject to these policy considerations.

**10.** Under Chapter 7, only debts that arose before the order for relief [here the date of the filing of the voluntary petition, 11 U.S.C. § 301] may be discharged. 11 U.S.C. § 727(b).

Bankruptcy Code does not conclude our inquiry. Section 523 of the Code lists exceptions to discharge in Chapter 7 for certain debts. In particular, § 523(a)(7) excepts from discharge a debt for a fine, penalty or forfeiture payable to and for the benefit of a governmental unit, and § 523(a)(9) excepts from discharge a debt arising from a judgment for driving while intoxicated. The district court held that the Merit Rating Plan surcharge does not fall within the exception to discharge under § 523(a)(7). Because we hold that the surcharge falls within the exception to discharge contained in § 523(a)(9), we need not address § 523(a)(7). Therefore, we turn to a discussion of the applicability of § 523(a)(9).

### A.

■ As in all cases of statutory interpretation, the starting point must be the statutory language itself. *United States v. Ron Pair Enterprises,* —— U.S. ——, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *Consumer Product Safety Comm. v. GTE Sylvania,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). "The strong presumption [is] that Congress expresses its intent through the language it chooses." *INS v. Cardoza–Fonseca,* 480 U.S. 421, 107 S.Ct. 1207, 1213 n. 12, 94 L.Ed.2d 434 (1987).

Section 523(a)(9) of the Bankruptcy Code excepts from discharge a debt

> to any entity, to the extent that such debt arises from a judgment or consent decree entered in a court of record against the debtor wherein liability was incurred by such debtor as a result of the debtor's operation of a motor vehicle while legally intoxicated under the laws or regulations of any jurisdiction within the United States or its territories wherein such motor vehicle was operated and within which such liability was incurred;
> . . .

11 U.S.C. § 523(a)(9) (Supp. V 1988). The district court held that the insurance surcharge falls within this statutory language and is therefore excepted from discharge. Lugo argues that this language does not

encompass a surcharge because § 523(a)(9) applies only to judgments of tort victims injured as a result of a drunk driving accident.

Lugo structures his argument by parsing the statute into discrete elements. First, Lugo contends that the element of a "judgment" required by the section is absent, claiming that the municipal court judgment entered against Lugo does not suffice. Specifically, Lugo argues that his conviction does not fulfill the requirement of a "judgment" because it was not a judgment "wherein liability was incurred," as stated in § 523(a)(9). We conclude, however, that the Municipal Court judgment of conviction did impose "liability," which has a broad application. *See* Black's Law Dictionary 823 (5th ed. 1979) (" 'Liability' ... has been referred to as of the most comprehensive significance, including almost every character of hazard or responsibility, absolute, contingent, or likely."); *cf. In re Bennett,* 80 B.R. 800, 801 (Bankr.E.D.Va.1988) ("There is no distinction between judgments [under § 523(a)(9) ]; it is all-inclusive."). *Contra In re Rose,* 86 B.R. 86, 88 (Bankr.E.D.Mich.1988). Moreover, it is a judgment "entered in a court of record" (the Municipal Court), as required by § 523(a)(9).

Second, Lugo argues that, through the use of the word "wherein" in the statute, Congress intended that the nondischargeable liability be found in the judgment. Since Lugo's municipal court judgment did not impose the Merit Rating Plan surcharge, Lugo contends that Congress did not contemplate its · discharge under § 523(a)(9). · Lugo also argues that the surcharge does not "arise from" the judgment because the surcharge originated from the New Jersey Merit Rating Plan, rather than from the municipal court judgment. We· conclude, however, that the statutory requirements have been met. The statutory provision that imposes the surcharge, N.J. Stat.Ann. 17:29A–35, becomes operative when a judgment of conviction is entered against the debtor. Consequently, the surcharge does "arise from" a judgment. Furthermore, the statute's application is

not limited to liabilities embodied in the judgment itself. The language of § 523(a)(9) does not evince an intent by Congress to limit application of § 523(a)(9) solely to liability found in civil tort judgments.

Finally, citing *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915), Lugo contends that we must construe the section narrowly. Although we recognize that exceptions to discharge must be narrowly construed, Congress' use of the words "to any entity" does not support an interpretation limiting the section's applicability to tort judgments only. *See Lugo v. Paulsen*, 94 B.R. at 342. Indeed, in construing a statute, we must give effect to "every clause and word" which Congress used. *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955). Therefore, we conclude that the Merit Rating Plan surcharge falls within the statutory language of § 523(a)(9).

### B.

Lugo further contends that the district court's interpretation of § 523(a)(9) conflicts with the section's legislative history, which, according to Lugo, demonstrates that Congress intended § 523(a)(9) to except from discharge only civil tort liability resulting from drunk driving accidents. Therefore, we will review the history of the enactment of § 523(a)(9) to ensure that our reading of the statute is not plainly contradicted by clearly expressed legislative intent. *I.N.S. v. Cardoza–Fonseca*, 107 S.Ct. at 1213 n. 12; *see also Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 285, 76 S.Ct. 349, 359, 100 L.Ed. 309 (1956) (quoting *United States v. Heirs of Boisdore*, 8 How. 113, 122, 12 L.Ed. 1009 (1849) (" 'In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy."). Before proceeding, however, we note that we must not allow analysis of the legislative history to distort a clear statutory purpose. *United States v. Martinez–Zayas*, 857 F.2d 122, 129 (3d Cir.1988).

The initial legislative proposals in this area were never enacted. In 1982, Senator Danforth proposed a bill that would have added a subsection (e) to § 523:

Any injury resulting in a judgment based upon liability of the debtor where, in connection with such liability such debtor was found to have operated a motor vehicle while legally intoxicated shall be deemed to be a willful and malicious injury for purposes of subsection (a)(6) of this section.

128 Cong.Rec. 2846 (March 2, 1982). Thereafter, a version of section 523(a)(9) was introduced by Senator Dole as part of the Omnibus Bankruptcy Improvements Act of 1983 (the Omnibus Act). S. 445, 129 Cong.Rec. 9953, 9957 (April 27, 1983). After Senator Dole introduced the Omnibus Act, Senator Danforth remarked: "Subtitle D is a modified version of S. 605, a bill I introduced earlier this session ... [which] would have defined drunk driving as a willful and malicious offense for purposes of the bankruptcy statute. The provision in the bill before us achieves the same result by specifically stating that debts arising from drunk driving shall be nondischargeable." 129 Cong. Rec. 9998 (April 27, 1983).

In his remarks accompanying the Omnibus Act, Senator Metzenbaum described the section on the dischargeability of debts incurred as a result of driving while intoxicated:

Also contained in this package is a modified version of a bill introduced by Senator Danforth which provides that a debt incurred as a result of drunk driving is not dischargeable. Under existing law, a debt resulting from a tortious act is nondischargeable only if the debt is the result of a "willful and malicious injury" to the property or person of another. In most States, the act of the drunk driver is grounded in negligence and is, thus, dischargeable. By making such debts nondischargeable, we can protect victims of the drunk driver and deter drunk driving.

129 Cong.Rec. 9974 (April 27, 1983)(statement of Senator Metzenbaum); *see also*

129 Cong.Rec. 9996 (April 27, 1983)(statement of Senator Heflin). The Report of the Senate Judiciary Committee on Senator Dole's Omnibus Act, entitled "Amendments Relating to the Discharge of Debts Incurred by Persons Driving While Intoxicated," mirrors Senator Metzenbaum's statement, and concludes that "[w]here a debt was incurred by the debtor as a result of an act of drunk driving, that debt will not be dischargeable regardless of any court finding that willful, wanton, or reckless behavior was or was not involved." Sen. Rep. No. 98–65, 98th Cong., 1st Sess. 43–44 (1983).

Although the Omnibus Act was not enacted, § 523(a)(9) was eventually enacted as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984). Accompanying the Act is the statement of Congressman Rodino: "Subtitle D clarifies present law relating to the nondischargeability of debts incurred by drunk drivers. Debts incurred by persons driving while intoxicated are presumed to be willfully and maliciously incurred under this provision." 130 Cong.Rec. H7489 (daily ed. June 29, 1984), *reprinted in* 1984 U.S.Code Cong. & Admin.News 576, 577.

At least one legislator's statement accompanying the current version of § 523(a)(9) suggest that Congress was concerned with the dischargeability of judgments in which the debtor had been held liable for an injury resulting from an act of drunk driving.[11] *See* 130 Cong.Rec. S8887 (daily ed. June 29, 1984)(remarks of Senator Heflin), *reprinted in* 1984 U.S.Code Cong. & Admin.News 585 ("There is a modified version of a bill introduced by Senator Danforth which provides that a debt incurred as a result of an accident caused by drunk driving is not dischargeable."). The legislative history does not indicate, however, that this was the only type of debt that Congress intended to except from discharge under § 523(a)(9). Indeed, Congress eventually enacted a much broader exception to discharge than that originally proposed by Senator Danforth, under whose bill "[a]ny *injury* resulting in a judgment based upon liability of the debtor where, in connection with such liability such debtor was found to have operated a motor vehicle while legally intoxicated shall be deemed to be a willful and malicious *injury*." S.2159, 97th Cong., 2d Sess. In addition, the remarks of legislators suggest that their concern with the dischargeability of debts resulting from acts of drunk driving stemmed as much from a desire to deter drunk driving as to protect the victims of accidents. *See, e.g.,* 129 Cong.Rec. 9947 (April 27, 1983)(statement of Senator Metzenbaum); 129 Cong.Rec. 9953, 9957 (April 27, 1983) (statement of Senator Danforth upon Senator Dole's introduction of Omnibus Act)("The provision in the bill before us achieves the same result [as the bill earlier introduced by Senator Danforth] by specifically stating that debts arising from drunk driving shall be nondischargeable."). *See also In re Hudson*, 859 F.2d 1418, 1422 (9th Cir.1988)("Statements of ... legislators bear out the contention that combating drunk driving, and not protecting judgments, was the paramount concern of Congress."). We also note that the Ninth Circuit, in addressing the dischargeability provision of § 523(a)(9), found it "evident that Congress sought three objectives when it adopted § 523(a)(9): (1) to deter drunk driving; (2) to ensure that those who caused injury by driving drunk did not escape civil liability through the bankruptcy laws; and (3) to protect victims of drunk driving." *In re Hudson*, 859 F.2d at 1423.

We conclude that nothing in the congressional record suggests that Congress intended to limit application of § 523(a)(9) solely to civil tort judgments. We also conclude that Congress intended § 523(a)(9) to act as a deterrent to drunk driving. We recognize that Merit Rating Plan surcharges are civil and remedial, rather than punitive, in nature. Nevertheless, they do arise

---

11. Tort judgments resulting from a drunk driving accident were generally dischargeable under the Bankruptcy Code prior to passage of § 523(a)(9) because many acts of drunk driving only supported a finding of negligence, rather than of willful or malicious conduct on the part of the driver. In bankruptcy, only judgments resulting from a willful or malicious act are not dischargeable. *See* § 523(a)(6). Section 523(a)(9) plainly closed this loophole.

as a consequence of driving while intoxicated, and therefore may serve to deter drunk driving.

### C.

As a final matter, in reaching our holding, we have not lost sight of the principle that the exceptions to discharge contained in § 523(a) must be narrowly construed so as not to conflict with the underlying purpose of the Bankruptcy Code to give debtors a "fresh start." *See Perez v. Campbell,* 402 U.S. 637, 648, 91 S.Ct. 1704, 1710–1711, 29 L.Ed.2d 233 (1971). There may be some circumstances where a debt that ultimately results from a drunk driving accident may not fall within § 523(a)(9).[12] *See, e.g., In re Gill,* 93 B.R. 684 (Bankr.W.D. Mo.1988) (fact that debtor "totaled" his car in accident while driving intoxicated did not render his debt to seller of car for purchase price nondischargeable under § 523(a)(9)).

### VI.

For the foregoing reasons, we hold that the surcharge levied under New Jersey's Merit Rating Plan, N.J.Stat.Ann. 17:29A–34 *et seq.,* on individuals convicted of driving under the influence of liquor, qualifies as a "debt" under the Bankruptcy Code. Moreover, we hold that this surcharge, although properly characterized as a "debt," is excepted from discharge under 11 U.S.C. § 523(a)(9). Having concluded that this surcharge is excepted from discharge in Chapter 7 under § 523(a)(9), we need not reach the other claims raised by appellant regarding 11 U.S.C. § 525, the Supremacy Clause, and 42 U.S.C. § 1983.[13]

We will therefore affirm the judgment of the district court.

Each side to bear its own costs.

---

**12.** We do not decide whether the surcharge is dischargeable under Chapter 13. *See* 11 U.S.C. § 1328(a); *In re Christensen,* 95 B.R. 886 (Bankr.D.N.J.1988); *In re Bill,* 90 B.R. 651 (Bankr.D.N.J.1988).

**13.** We would have addressed these contentions only if we had concluded that the Merit Rating Plan surcharges were dischargeable in Chapter 7 and that New Jersey's practice of collecting the Merit Rating Plan surcharges conflicted with the federal Bankruptcy Code.