**In re Christopher GEIGER, et al., Debtors.**

**Michele GEIGER, Appellee,**

v.

**COMMONWEALTH of PENNSYLVANIA, et al., Appellants.**

Civ. A. No. 92–2137.
Bankruptcy No. 91–16256S.
Adv. No. 91–1092S.

United States District Court,
E.D. Pennsylvania.

July 17, 1992.

Robert F. Salvin, Temple Legal Aid Office, Philadelphia, Pa., for debtors and appellee.

Marc A. Werlinsky, King of Prussia, Pa., for appellants.

## MEMORANDUM

BARTLE, District Judge.

The issue presented in this appeal from the Bankruptcy Court is whether the Bankruptcy Code excuses Michele Geiger, a debtor in a Chapter 13 proceeding, from paying the Pennsylvania Department of Transportation ("PENNDOT") a $25.00 fee as a precondition to the restoration of her suspended driver's license.[1]

On or about May 24, 1991, PENNDOT suspended Ms. Geiger's motor vehicle operating privileges pursuant to 75 Pa.Cons. Stat.Ann. § 1772(a) because of an unsatisfied civil judgment against her arising from a motor vehicle accident.[2] Initially, PENNDOT told Ms. Geiger that restoration of her driving privileges required compliance with the following conditions: (1) payment of a $25.00 restoration fee pursuant to 75 Pa.Cons.Stat.Ann. § 1960;[3] (2)

---

1. Chapter 13 of the Bankruptcy Code, 11 U.S.C.A. § 1301 *et seq.*, governs the "Adjustment of Debts of an Individual with Regular Income."

2. 75 Pa.Cons.Stat.Ann. § 1772(a) provides:
 The department, upon receipt of a certified copy of a judgment, shall suspend the operating privilege of each person against whom judgment was rendered except as otherwise provided in this section and in section 1775

(relating to installment payment of judgments).

3. 75 Pa.Cons.Stat.Ann. § 1960 provides as follows:
 The department shall charge a fee of $25 or, if section 1786(d) (relating to required financial responsibility) applies, a fee of $50 to restore a person's operating privilege or the registra-

proof that the judgment against her was satisfied pursuant to 75 Pa.Cons.Stat.Ann. § 1773 or that payments thereon were being made in accordance with an agreement with the judgment creditor in accordance with 75 Pa.Cons.Stat.Ann. § 1775;[4] and (3) provision of proof of financial responsibility in conformity with 75 Pa.Cons.Stat.Ann. § 1783 or verification that no motor vehicles are registered in her name.[5] Apparently because of her November 22, 1991 joint Chapter 13 bankruptcy filing with her husband, however, PENNDOT thereafter notified Ms. Geiger that proof of satisfaction of the outstanding judgment was no longer necessary to obtain the reinstatement of her license. The Geigers nevertheless subsequently filed a complaint in the Bankruptcy Court, challenging the action of PENNDOT in refusing to restore her driver's license without paying the $25.00 charge.

On March 4, 1992 the United States Bankruptcy Judge issued an opinion and order with respect to the debtors' complaint. 137 B.R. 586. The Bankruptcy Judge held, among other things (1) that the $25.00 license restoration fee which PENNDOT sought to collect pursuant to 75 Pa. Cons.Stat.Ann. § 1960 was a pre-petition debt which is potentially dischargeable in the debtors' Chapter 13 bankruptcy, and (2) that 11 U.S.C. § 525(a), which prohibits discrimination against bankrupt debtors, mandated the conclusion that Ms. Geiger could not be deprived of her driver's license

based on non-payment of the restoration fee.

PENNDOT and the Pennsylvania Secretary of Transportation filed a timely appeal to this Court. On appeal PENNDOT contends: (1) that the $25.00 administrative fee to restore Ms. Geiger's operating license is not a pre-petition bankruptcy debt; (2) that requiring payment of the $25.00 restoration fee is not discriminatory under 11 U.S.C. § 525(a); and (3) that Ms. Geiger's operating privilege is not property of the estate.

 This Court must first decide whether the $25.00 fee to restore Ms. Geiger's license is a debt which is potentially dischargeable in bankruptcy.[6] Under the Bankruptcy Code "debt" means "liability on a claim," 11 U.S.C. § 101(12). The Bankruptcy Code defines "claim" in pertinent part as:

(A) *right to payment*, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured . . .

11 U.S.C. § 101(5) (emphasis added).

There is no question that Congress intended to adopt the broadest possible definition of the term "claim" when it enacted 11 U.S.C. § 101(5), which speaks in terms of a "right to payment." *See Johnson v. Home States Bank*, — U.S. —, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991). Thus, the Supreme Court concluded in

---

tion of a vehicle following a suspension or revocation.

**4.** 75 Pa.Cons.Stat.Ann. § 1773 provides that:

A person's operating privilege shall remain suspended and shall not be renewed in the name of that person unless and until every judgment is stayed, satisfied in full or to the extent provided in this subchapter, and until the person furnishes proof of financial responsibility as required.

75 Pa.Cons.Stat.Ann. § 1775(b), however, further provides in pertinent part that:

The department shall . . . restore any operating privilege suspended following nonpayment of a judgment when the judgment debtor obtains an order permitting payment of the judgment in installments and while the payment of any installment is not in default,

provided that the judgment debtor furnishes proof of financial responsibility.

**5.** 75 Pa.Cons.Stat.Ann. § 1783 provides that:

Whenever the department suspends or revokes the operating privilege of any person or the registration of any vehicle . . . the department shall not restore the operating privilege or the applicable registration until the person furnishes proof of financial responsibility.

**6.** The issue of the dischargeability of obligations in Chapter 13 cases generally is not ripe for decision until the debtor has completed the Chapter 13 plan and is prepared to receive a discharge order. *In re Johnson–Allen*, 871 F.2d 421, 423, 428 (3d Cir.1989), *aff'd sub nom Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990).

*Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 558–60, 110 S.Ct. 2126, 2131, 109 L.Ed.2d 588 (1990), and reiterated in *Johnson, supra,* —— U.S. at ——, 111 S.Ct. at 2154, that "The plain meaning of a 'right to payment' is nothing more than an enforceable obligation, regardless of the objectives the State seeks to serve in imposing the obligation." Similarly, the Third Circuit explained in *Lugo v. Paulsen,* 886 F.2d 602, 605 (3d Cir.1989), that:

> the [Bankruptcy] Code "contemplates that *all legal obligations* of the debtor, no matter how remote or contingent, be able to be dealt with in bankruptcy" to permit the "broadest possible relief in bankruptcy court."

(emphasis added).

■ While the terms "debt" and "claim" must be broadly construed under the Bankruptcy Code, it does not follow that there is an "enforceable obligation" or "legal obligation" within the meaning of § 101(5) merely because a debtor might ultimately be required to make a payment to the Commonwealth if she desires, without compulsion, to obtain a particular service or privilege, such as a license reinstatement.

The statutorily mandated $25.00 license restoration fee required under Pennsylvania law, which the Bankruptcy Court deemed a pre-petition debt, does not constitute either a pre-petition "right to payment" or an "enforceable obligation." Ms. Geiger has no "enforceable obligation" to tender payment to have her driver's license restored because she has no obligation to seek restoration of that license—a license which she did not possess when she filed her bankruptcy petition. Likewise, the Commonwealth has no "right to payment" because Ms. Geiger is not required to seek restoration of her driver's license.

■ The restoration fee, rather than an obligation, is an across-the-board charge which must be paid by any citizen who voluntarily chooses to seek the reinstatement of a previously revoked or suspended license. *See* 75 Pa.Cons.Stat.Ann. § 1960. It applies to a far broader range of individuals than those, like Ms. Geiger, who have had their licenses revoked because of unsatisfied civil judgments. *See* 75 Pa.Cons. Stat.Ann. §§ 1532(a) and (b), 1533, 1539, 1547(b), 1784, and 1785. It is no different than requiring debtors under the Code to pay license or car registration renewal fees or to demonstrate financial responsibility in order to operate a motor vehicle on the roads of the Commonwealth of Pennsylvania. A discharge of existing debts under the Bankruptcy Code does not exonerate debtors from future payments for goods, services or privileges which they are under no enforceable or legal obligation to purchase or obtain.

Both the debtor and the Bankruptcy Code rely heavily on the Court of Appeals' decision in *Lugo, supra,* to support their position that the Pennsylvania license restoration fee is a "debt" under the Bankruptcy Code. The restoration fee, however, is entirely unlike and totally distinguishable from the pre-petition surcharge considered in *Lugo.*

In *Lugo,* the state of New Jersey ordered the debtor to pay a $3000 automobile insurance surcharge over a three year period. That surcharge arose following the debtor's drunk driving conviction but before the filing of a Chapter 7 bankruptcy petition.[7] It constituted an obligation, as to which the state had an absolute right to payment.

■ Applying the definitions of "debt" and "claim" as set forth in the Bankruptcy Code, the *Lugo* court held the surcharge to be a pre-petition debt.[8] Similarly, traffic fines which arose pre-petition and were obligations enforceable by threat of license suspension, have been held to be pre-petition debts under the Bankruptcy Code. *In re Colon,* 102 B.R. 421 (Bankr.E.D.Pa. 1989), appeal dismissed *Szostek v. Hart,*

---

7. Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 *et seq.,* is concerned with liquidation of the bankrupt's estate.

8. The surcharge was not found to be dischargeable only because of former 11 U.S.C. § 523(a)(9) which excepted from discharge a debt arising from a judgment for driving while intoxicated.

**34**

123 B.R. 719 (E.D.Pa.1991). In contrast, the $25.00 license restoration fee here does not amount to a debt or "enforceable obligation" as to which any creditor has a "right to payment." The Commonwealth can never sue Ms. Geiger or take any action against her if she never pays the fee for reinstatement of her license which was suspended before the filing of her bankruptcy petition.[9]

■ Since the $25.00 restoration fee is not a dischargeable "debt" under § 101 of the Bankruptcy Code, this Court must next decide whether PENNDOT's enforcement of the $25.00 restoration fee as to Ms. Geiger is discriminatory and violative of 11 U.S.C. § 525(a) which provides, in relevant part that:

> ... a governmental unit may not deny ... or refuse to renew a license ... to ... a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, ... solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.[10]

The Commonwealth has not refused to renew Ms. Geiger's driver's license solely because she "has been a debtor ... under the Bankruptcy Act" or for any other reason prohibited by § 525(a). Ms. Geiger is not being treated differently than other drivers in the Commonwealth on account of her debtor status. The $25.00 restoration fee is not applicable only to those who are or were bankrupts or debtors. The restoration fee must also be paid by individuals seeking the restoration of licenses and/or registrations which were suspended or revoked (1) following convictions or delinquency adjudications for specified felonies or Pennsylvania Vehicle Code offenses (75 Pa.Cons.Stat.Ann. § 1532(a) and (b)); (2) for failure to respond to a traffic citation (75 Pa.Cons.Stat.Ann. § 1533); (3) on account of the accumulation of a specified number of points under the provisions of the Pennsylvania Vehicle Code (75 Pa.Cons. Stat.Ann. § 1539); (4) for failure to submit to chemical testing while under arrest for driving while under the influence of alcohol or a controlled substance (75 Pa.Cons.Stat. Ann. § 1547(b)); and (5) for failure to prove financial responsibility following conviction of a traffic offense or following involvement in a traffic accident (75 Pa.Cons.Stat. Ann. §§ 1784 and 1785).

Decisions by other courts support the position that the collection of the license restoration fee is not discriminatory under 11 U.S.C. § 525(a). In *In re Norton*, 867 F.2d 313 (6th Cir.1989), the Court held that Tennessee's Financial Responsibility Act

---

**9.** Moreover, even if it were assumed for the sake of argument that the administrative license restoration fee amounted to a debt or claim for purposes of the Bankruptcy Code, the result would be no different. 11 U.S.C. § 362(a) provides that the filing of a bankruptcy petition acts as an automatic stay, applicable to all entities, which respect to eight specified categories of actions. Categories relating to debts and claims which have been offered as arguably pertinent to this case are contained in subsections (1) and (6) of § 362(a). They pertain, however, only to claims arising "before the commencement of the case under this title." Instantly, even assuming that the restoration fee amounts to a debt or obligation, it only arose *post-petition*, upon the point of satisfaction of the judgment and the financial responsibility requirement. Hence, it would not be covered by the automatic stay provision of 11 U.S.C. § 362(a). *See In the Matter of Frenville*, 744

F.2d 332 (3d Cir.1984), *cert. denied* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985), in which the Court, applying New York law, found that a claim for contribution or indemnification was not subject to the automatic stay because it arose post-petition when the indemnification suit was filed (the first point when suit could be commenced under New York law), not pre-petition when the acts giving rise to liability occurred.

**10.** 11 U.S.C. § 525(a) codified the United States Supreme Court's decision in *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). *Perez* struck down an Arizona statute that preconditioned the operation of a motor vehicle upon the satisfaction of any prior tort judgment arising out of an automobile accident notwithstanding the receipt of a discharge in bankruptcy.

did not violate that section of the Bankruptcy Code when it permitted a debtor to avoid license revocation by paying the same $65.00 license restoration fee which any financially irresponsible driver seeking license restoration must pay. Similarly, *Duffey v. Dollison,* 734 F.2d 265 (6th Cir. 1984), held that Ohio's Financial Responsibility Act, which required the showing of future financial responsibility in order to reinstate driving privileges, was not violative of 11 U.S.C. § 525(a).[11]

■ Finally, we must determine whether Ms. Geiger's license to operate a motor vehicle is protected estate property. The automatic stay provision, 11 U.S.C. § 362(a), prohibits in subsection (3) the post-petition exercise of control "over property of the estate," and in subsection (2) the post-petition "enforcement, ... against property of the estate, of a [pre-petition] judgment ..."

The Bankruptcy Code defines property of the estate in pertinent part as:

all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. § 541(a)(1).

Because the Bankruptcy Court found that Ms. Geiger's license restoration fee was a potentially dischargeable pre-petition debt, which was being enforced in violation of 11 U.S.C. § 525(a), it did not purport definitively to resolve the question of whether her operating privilege is property of the estate within the purview of § 541(a)(1). It did state at 137 B.R. 593 of its Opinion, however, that:

the courts in [*In re*] *Adams,* [106 B.R. 811 (Bankr.D.N.J.1989),] *Colon,* [*supra,*] and [*In re*] *Bill,* [90 B.R. 651 (Bankr. D.N.J.1988),] had little difficulty in concluding that a state's withholding of driving privileges is a violation of the automatic stay, *suggesting that these courts believed that such "privileges" were in-*

*deed property of the respective debtors' estates.*

(emphasis added).

The Bankruptcy Court's opinion is not persuasive. The *Adams, Colon,* and *Bill* courts merely held that various traffic fines and New Jersey insurance surcharges were dischargeable pre-petition debts which could not be enforced by threat of license suspension without violating the non-discrimination provisions of 11 U.S.C. § 525(a). They did not consider whether an operator's license is property of a debtor's estate and certainly did not suggest the result espoused by the Bankruptcy Court.

■ While property is broadly defined by the Bankruptcy Code, state law is largely determinative with respect to the existence and dimensions of any purported property right. *In re Nejberger,* 934 F.2d 1300, 1301, 1302 (3d Cir.1991). The label affixed by state law, however, "is not always dispositive. The principal question is whether the substance of the right or interest in question brings it within the scope of estate property under the Bankruptcy Act." *Ibid.* at 1302.

■ A driver's license is a privilege and not property. The Pennsylvania Vehicle Code defines "Operating privilege" as:

The *privilege* to apply for and obtain a license to use as well as the *privilege* to use a vehicle on a highway as authorized in this title, *but not a contract, property right or civil right.*

75 Pa.Cons.Stat.Ann. § 102 (emphasis added). It defines "Driver's license" as:

A license or permit to drive a motor vehicle issued under this title.

75 Pa.Cons.Stat.Ann. § 102. Further, in *Sheakley v. Commonwealth, Dept. of Transportation,* 99 Pa.Commw. 328, 513 A.2d 551, 553 (1986), *appeal denied,* 515 Pa. 586, 527 A.2d 546 (1987), the Pennsylvania Commonwealth Court declared:

---

**11.** *See also In re Christmas,* 102 B.R. 447 (Bankr.D.Md.1989), which upheld, as consistent with 11 U.S.C. § 525(a), the suspension of a debtor horse trainer's training license because the trainer was unable to demonstrate financial responsibility. The Court so held because of the

valid underlying purpose of Maryland's financial responsibility rule—to prohibit irresponsible conduct—and its across-the-board non-discriminatory application to debtors and non-debtors alike.

It is now beyond question that operating a motor vehicle upon the highways is not a civil or property right but is a privilege, the enjoyment of which is subject to such regulation and control as the Commonwealth sees fit to impose.

The debtor relies on decisions holding that liquor licenses are property of the estate within the broad meaning of § 541(a). *E.g., Nejberger, supra* at 1302. These cases are inapposite. Unlike liquor and similar commercial and commercially-oriented licenses that have been held to be property of an estate, a driver's license is not transferable, does not have a tangible pecuniary or marketable value, and is incapable of financial quantification. Similarly, courts have held that FCC licenses and medical licenses are not property of a bankrupt's estate. *See, e.g., In re Overmyer Telecasting Co., Inc.*, 35 B.R. 400 (Bankr.Ohio 1983); *Matter of Lynn*, 18 B.R. 501 (Bankr.Conn.1982). It is no more logical to conclude that a driver's license rises to the level of "property" within the meaning of § 541(a), than it would be to find that fishing or hunting licenses are such property.

The Bankruptcy Code does not prohibit PENNDOT from charging Ms. Geiger a $25.00 fee if she seeks to have her Pennsylvania driver's license restored. The order of the Bankruptcy Court will be reversed to the extent that it is inconsistent with this Memorandum.