

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-9-2005

# In Re: Schick

Precedential or Non-Precedential: Precedential

Docket No. 04-2611

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"In Re: Schick " (2005). *2005 Decisions.* Paper 620.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/620

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-2611

———

IN RE: TRACEY L. SCHICK

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 04-cv-00067)
District Judge: Honorable Robert B. Kugler

———

Argued April 18, 2005

Before: ROTH, FUENTES, and BECKER, Circuit Judges.

(Filed: August 9, 2005)

Eric J. Clayman (Argued)
John A. Gagliardi
Jenkins & Clayman
412 White Horse Pike
Audubon, New Jersey 08106

ATTORNEYS FOR APPELLANT

Peter C. Harvey
Attorney General of New Jersey
Patrick DeAlmeida
Assistant Attorney General
Tracy E. Richardson (Argued)
Deputy Attorney General

-1-

Margaret A. Holland
Deputy Attorney General
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 106
Trenton, New Jersey 08625

ATTORNEYS FOR APPELLEE

———

OPINION OF THE COURT

———

FUENTES, Circuit Judge.

This matter requires us to determine whether a lien held by the New Jersey Motor Vehicles Commission ("MVC") for unpaid motor vehicle surcharges and interest constitutes a judicial lien or a statutory lien as those terms are defined in the U.S. Bankruptcy Code (the "Code"). If it is a judicial lien, it may be avoided by the Debtor-Appellant, Tracey L. Schick, under 11 U.S.C. § 522(f) to the extent that it impairs her entitlement to a homestead exemption under 11 U.S.C. § 522(d)(1). However, if statutory, the lien may not be avoided by the Debtor. At least three bankruptcy courts within our jurisdiction have concluded that the MVC's lien is judicial, while two district courts have reached the opposite conclusion. For the reasons discussed below, we find that the MVC's lien is statutory. Accordingly, we will affirm the decision of the District Court.

## I. Background

The essential facts in this matter are not in dispute. In April 2001 and February 2002, the MVC issued certificates of debt to the Clerk of the Superior Court of New Jersey against Tracey L. Schick for unpaid motor vehicle surcharges and interest.[1] Subsequently,

---

[1]The New Jersey Division of Motor Vehicles ("DMV") became the MVC on January 28, 2003, following the passage of

on October 1, 2002, Schick filed a voluntary petition for bankruptcy under Chapter 13 of the Code. The Debtor's residence was listed with a value of $100,000, against which a secured proof of claim in the amount of $91,660 was filed by the first mortgagee. Schick also listed the MVC as an unsecured creditor.

Schick's Chapter 13 plan provided for the curing of arrears on her mortgage and on a car loan but included no provision for dividends to unsecured creditors. After the Bankruptcy Court confirmed the plan on February 28, 2003, the MVC filed a secured claim for $3,610, plus interest, based on motor vehicle surcharges assessed against Schick. In response, Schick moved to reclassify the MVC's secured claim as a general unsecured claim and to avoid its lien as impairing her homestead exemption. In particular, Schick argued that the MVC's claim was a judicial lien as that term is defined in the Code and could be avoided under 11 U.S.C. § 522(f) to the extent it impaired her homestead exemption arising in 11 U.S.C. § 522(d)(1).[2] In opposition, the MVC argued that its claim against Schick was a statutory lien, as that term is defined in the Code, and thus could not be avoided by the Debtor.

The Bankruptcy Court agreed with Schick, finding that the MVC's claim for unpaid surcharges and interest, which arose pursuant to New Jersey's surcharge statute, N.J. Stat. Ann. § 17:29A-35(b)(2), was a judicial lien, not a statutory lien. See In

---

the Motor Vehicle Security and Customer Service Act, N.J. Stat. Ann. § 39:2A-1 et seq.

[2]11 U.S.C. § 522(f) states in pertinent part:

> Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is

> (A) a judicial lien . . . .

re Schick, 301 B.R. 170, 175 (Bankr. D.N.J. 2003).  On appeal, the District Court reversed, finding that the MVC had a statutory lien, not a judicial lien, that could not be avoided by the Debtor.  See In re Schick, 308 B.R. 189, 194-95 (D.N.J. 2004).

Schick now brings this timely appeal, contending that the District Court's decision was in error.

## II.  Jurisdiction and Standard of Review

This Court has jurisdiction over the final order of the District Court, entered in a bankruptcy proceeding, pursuant to 28 U.S.C. §§ 158(d) and 1291.  Our standard of review is the same as that exercised by the District Court over the decision of the Bankruptcy Court.  See In re Zinchiak, 406 F.3d 214, 221-22 (3d Cir. 2005) (citing In re Pillowtex, Inc., 349 F.3d 711, 716 (3d Cir. 2003)).  Accordingly, we review findings of fact for clear error and exercise plenary review over questions of law.  Id. (citation omitted).

## III.  Discussion

As we noted in Graffen v. City of Philadelphia, the Bankruptcy Code recognizes three types of liens: judicial, statutory, and consensual.  984 F.2d 91, 96 (3d Cir. 1992) (citing H.R. Rep. No. 95-595, 95th Cong., 312 (1977), reprinted in 1978 U.S.C.C.A.N. 6269).  As the MVC's lien for unpaid motor vehicle surcharges was not created by consent, it must either be statutory or judicial.  We look to the Code for definitions of both terms.  A judicial lien is defined as a lien "obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36).  By contrast, a statutory lien arises "solely by force of a statute on specified circumstances or conditions . . . but does not include . . . [a] judicial lien, whether or not such . . . lien is made fully effective by statute." 11 U.S.C. § 101(53).  This distinction is amplified in the legislative history, which indicates that "[a] statutory lien is only one that arises automatically and is not based on an agreement to give a lien or on judicial action." H.R. Rep. No. 595, 95th Cong., 314 (1977); S. Rep. No. 95-989, 95th Cong., 27 (1978); 1978 U.S.C.C.A.N. 6271, 5811; see also

Gardner v. Pa., Dep't of Public Welfare, 685 F.2d 106, 109 (3d Cir. 1982) (finding that statutory lien "must be a lien arising automatically by operation of a statute, not one requiring subsequent judicial action").

In many cases, the distinction between a statutory lien and a judicial lien will be straightforward. For instance, the legislative history indicates that mechanics' liens, materialmen's liens, and warehousemen's liens, as well as tax liens, are types of statutory liens. See S. Rep. 95-989 at 27; H.R. Rep. No. 95-595 at 314 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5813, 6271; see also In re Sullivan, 254 B.R. 661, 664-65 (D.N.J. 2000) (finding that a tax lien is a statutory lien); In re Concrete Structures, Inc., 261 B.R. 627, 633-34 (E.D. Va. 2001) (finding that a mechanics' lien is a statutory lien); APC Constr., Inc. v. Hinesburg Sand & Gravel, Inc., 132 B.R. 690, 693-94 (D. Vt. 1991) (finding that a contractor's lien is a statutory lien). However, in other contexts, the distinction between statutory and judicial liens has proven more troublesome, and some courts have remarked that the Code provides little assistance in resolving such disputes. See, e.g., In re A&R Wholesale Distrib., Inc., 232 B.R. 616, 620 (Bankr. D.N.J. 1999) (noting that the Code provides "very little guidance for distinguishing a judicial lien from a statutory lien") (citation omitted). The issue, raised here, of whether the MVC's claim for unpaid surcharges is a judicial lien or statutory lien is one example where courts have reached conflicting results. Compare In re James, 304 B.R. 131, 136 (Bankr. D.N.J. 2004) (finding the New Jersey MVC surcharge lien to be judicial), with In re Fennelly, 212 B.R. 61, 66 (D.N.J. 1997) (finding the New Jersey MVC surcharge lien to be statutory). The relevant inquiry is to determine the nature of the MVC's lien, i.e., whether it arises solely by force of statute, or whether it results from some type of judicial process or proceeding.

We will first briefly consider the statutory scheme in New Jersey which gives rise to the MVC's claim for unpaid motor vehicle surcharges and interest. We then consider our decision in Graffen to determine whether the lien in favor of the MVC is judicial or statutory. Finally, we explain why we are unpersuaded by the arguments as well as the theories advanced by Schick, and

-5-

relied upon by the <u>In re Schick</u> and <u>In re James</u> bankruptcy courts, that the MVC's lien is judicial.

**A.**

One of the collateral consequences for the violation of motor vehicle laws in New Jersey is the imposition of surcharges against the driver. In particular, N.J. Stat. Ann. § 17:29A-35(b) (the "surcharge statute") establishes a rating plan under which the MVC levies surcharges on drivers in one of several different situations. <u>See generally</u> 25 Robert Ramsey, New Jersey Practice Series § 13.1-.6 (3d ed. 2001). For instance, surcharges may be levied against a driver who is assessed too many violation points, or who has been convicted of drunk driving or refusing to take a breathalyzer test. <u>See</u> N.J. Stat. Ann. § 17:29A-35(b)(1)(a), (b)(2). The amount of the surcharges is set forth in the statute and administrative regulations. <u>See</u> <u>id.</u>; N.J. Admin. Code tit. 13, § 19-13.1(a).

The MVC has several collection methods available to ensure payment of surcharges in the event of non-payment. At issue in this case is the ability of the MVC to file a certificate of debt with the Clerk of the Superior Court in the amount of the past due surcharge. <u>See</u> N.J. Stat. Ann. § 17:29A-35(b)(2); <u>see also</u> N.J. Admin. Code tit. 13, § 19-12.12(a). The surcharge statute states in pertinent part:

> As an additional remedy, the director may issue a certificate to the Clerk of the Superior Court stating that the person identified in the certificate is indebted under this surcharge law in such amount as shall be stated in the certificate. The certificate shall reference the statute under which the indebtedness arises. Thereupon the clerk . . . shall immediately enter upon the record of docketed judgments the name of such person as debtor; the State as creditor; the address of such person, if shown in the certificate; the amount of the debt so certified; . . . and the date of making such entries. The docketing of the entries shall have the same force and effect as

-6-

a civil judgment docketed in the Superior Court, and the director shall have all the remedies and may take all of the proceedings for collection thereof which may be had or taken upon the recovery of a judgment in an action, but without prejudice to any right of appeal.

N.J. Stat. Ann. § 17:29A-35(b)(2). Accordingly, the surcharge statute directs the MVC to file certificates of debt with the Clerk of the Superior Court, whose sole responsibility is to docket the debts in the amount as delivered. In New Jersey, when a judgment is docketed in the records of the Clerk of the Superior Court, it becomes a lien on the debtor's real estate. See N.J. Stat. Ann. § 2A:16-1.[3] Thus, the effect of the surcharge statute is to allow the MVC to obtain a lien on the driver's real property in the amount of the unpaid motor vehicle surcharges and interest.

**B.**

To determine whether the MVC's claim for unpaid motor vehicle surcharges and interest is a judicial lien or a statutory lien, we look to our decision in Graffen v. City of Philadelphia. In Graffen, we considered whether a lien obtained by the City of Philadelphia for unpaid water and sewer charges, pursuant to Pennsylvania's water lien statute, Pa. Stat. Ann. tit. 53, § 7106(b) (1972), created a statutory lien or a judicial lien under the Code.[4]

---

[3]"No judgment of the superior court shall affect or bind any real estate, but from the time of the actual entry of such judgment on the minutes or records of the court." See N.J. Stat. Ann. § 2A:16-1.

[4]The water lien statute stated in relevant part:

With the exception of those claims which have been assigned, any municipal claim, including interest, penalty and costs, imposed by a city of the first class, shall be a lien only against the said property after the lien has been docketed by the prothonotary [the chief clerk]. The docketing of the lien shall be given the

Under the statute, a municipal claim for unpaid water bills became a lien against the debtor's property, and had the effect of a judgment, after it had been docketed by a prothonotary and entered in the judgment index. The debtors had argued that the water lien statute created a judicial lien, which could be avoided under 11 U.S.C. § 522(f).

We disagreed, finding that the lien was statutory because it was not obtained by any "legal process or proceeding" within the meaning of the definition of a judicial lien, 11 U.S.C. § 101(36). Graffen, 984 F.2d at 96. We explained that these terms "inherently relate to court procedures or perhaps similar administrative proceedings." Id. Although we recognized that in some circumstances a judicial proceeding may be ex parte,[5] we concluded that where the Water Department administratively determined the amount of the lien, and the prothonotary's sole responsibility was to docket the lien as delivered, the lien fell within the Code's definition of a statutory lien as it arose "solely by force of statute." Id. (citing 11 U.S.C. § 101(53)). In addition, we rejected the argument that the act of docketing the City's lien in the judgment index by the prothonotary rendered the lien a judicial lien:

> [D]ocketing simply would be a specified condition for creation of the statutory lien as defined in 11 U.S.C. § 101(53). The legislative history of the Bankruptcy Code, which demonstrates that mechanics' liens can be statutory, supports this

> effect of a judgment against the said property only with respect to which the claim is filed as a lien. The prothonotary shall enter the claim in the judgment index.

Pa. Stat. Ann. tit. 53, § 7106(b).

[5]For instance, in Gardner, we recognized that "a lien obtained by confessed judgment is a judicial lien avoidable under § 522(f)(1) of the Code, and not a security interest or a statutory lien." 685 F.2d at 108.

conclusion. Inasmuch as at least in some states public filing is required to preserve mechanics' liens, there is no reason why the requirement that a water lien be docketed means that it cannot be statutory.

984 F.2d at 97 (internal citations omitted).

We find Graffen to be persuasive in this case based on the similarities between the Pennsylvania water lien statute and the New Jersey surcharge statute. For instance, as with the water lien statute in Graffen, the amount of the debt here is determined either as a matter of statute or administrative regulation, as noted above. Moreover, like the prothonotary in Graffen, the only duty of the Clerk of the Superior Court, with respect to the lien, is to docket the certificates of debt as delivered in "the amount of the debt so certified." N.J. Stat. Ann. § 17:29A-35(b)(2). As we made clear in Graffen, the mere act of docketing a debt by the Clerk of the Superior Court as part of his ministerial duties is insufficient to render the MVC's lien a judicial lien. Graffen, 984 F.2d at 97; see also In re Fennelly, 212 B.R. at 65 ("[T]he mere ministerial act of recording the lien does not create the requisite legal process or proceeding to be a judicial lien."). Nor is there is any "legal process or proceeding" here within the meaning of the definition of a judicial lien, 11 U.S.C. § 101(36), nor any other type of "court procedures or perhaps similar administrative proceedings." Graffen, 984 F.2d at 96. Rather, the requirement that the certificates of debt be docketed is one of the specified conditions for the creation of the statutory lien. In these circumstances, the lien held by the MVC is one that arises "solely by force of statute" within the definition of a statutory lien, in 11 U.S.C. § 101(53).

At oral argument, counsel for the Debtor raised the possibility that there was sufficient judicial process or proceeding in this matter to find a judicial lien. In particular, counsel noted that, in certain instances, the MVC may not impose surcharges without a driver first being convicted in state court for driving violations. The Bankruptcy Court also suggested this approach in its opinion. See Schick, 301 B.R. at 175 n.6 ("Convictions for driving while intoxicated and for motor vehicle violations are premised on the opportunity of the driver charged with the offense

to be provided with a full adjudicatory process, usually in municipal court, which qualifies as a 'legal proceeding.'"). However, in our view, the underlying traffic proceeding charging the driver with a motor vehicle offense is too remote to constitute the required judicial process or proceeding necessary to find a judicial lien. Any such proceeding bears no relation to the creation of the lien in favor of the MVC, which instead arises as a result of the filing of the certificate of debt and its docketing by the Clerk of the Superior Court. Moreover, the amount of the surcharge is set forth either in the statute or administrative regulation and is not determined by the underlying proceeding against the driver. See N.J. Stat. Ann. § 17:29A-35(b)(1)(a), (b)(2); N.J. Admin. Code tit. 13, § 19-13.1(a). Certainly, the Clerk of the Superior Court's sole responsibility under the surcharge statute is to docket the certificate of debt as delivered in "the amount of the debt so certified," N.J. Stat. Ann. § 17:29A-35(b)(2), without any reference or reliance on the underlying proceeding against the driver. Thus, in light of our decision in Graffen, we are satisfied that the lien in favor of the MVC is statutory.

Our decision in Lugo v. Paulsen, 886 F.2d 602 (3d Cir. 1989), is not to the contrary. In Lugo, we found that New Jersey MVC surcharges were not dischargeable in bankruptcy, relying on 11 U.S.C. § 523(a)(9), which excepts from discharge a debt "to the extent that such debt arises from a judgment . . . entered against the debtor wherein liability was incurred by such debtor as a result of the debtor's operation of a motor vehicle while legally intoxicated . . . ." We found that "the surcharge does 'arise from' a judgment" for the purposes of non-dischargeability. Lugo, 886 F.2d at 608. But Lugo discussed a different section of the Code from that at issue here, and our concern there was to determine the ultimate source of the debt and to effectuate the congressional purpose of deterring drunk driving. That purpose is not at issue here, and our concern is not for the ultimate source of Schick's debt but rather the proper characterization of her lien. While her surcharge debt may have arisen from a judicial proceeding, the lien to enforce that debt was purely statutory.

## C.

-10-

Schick seeks to distinguish <u>Graffen</u> because, unlike the water lien statute which explicitly created a lien in favor of the municipal authorities and thereafter permitted the docketing of the lien, here the surcharge statute itself does not create the lien. Rather, the lien arises only because the surcharge statute permits the MVC to file a certificate of debt, which becomes a lien on the debtor's property only because the docketing is to have the effect of a civil judgment under New Jersey law. Similarly, the Bankruptcy Court in this matter, relying essentially on this distinction, found <u>Graffen</u> to be inapplicable. In particular, the Bankruptcy Court concluded that the appropriate method to analyze the surcharge statute is by focusing not on the language "obtained . . . by other legal or equitable process or proceeding" in the definition of judicial lien, but rather on the language "obtained by judgment," which is a separate component of the definition of a judicial lien in 11 U.S.C. § 101(36). <u>In re Schick</u>, 301 B.R. at 174-75. By focusing on the language "obtained by judgment," the Bankruptcy Court observed that the surcharge statute confers on the MVC all the benefits of a civil judgment, which includes a lien on the debtor's real property. <u>Id.</u> Accordingly, because the docketing grants the MVC the benefits of a civil judgment, which thereby creates a lien against the debtor's property, the Bankruptcy Court concluded that the MVC's lien is thus "obtained by judgment" within the meaning of 11 U.S.C. § 101(36).

However, we think the Bankruptcy Court placed too much weight on the word "judgment" in 11 U.S.C. § 101(36) and read it in isolation from the rest of the definition. <u>See</u> <u>In re Zukowfsky</u>, 1995 WL 695108, at *3 (E.D. Pa. Nov. 21, 1995) (noting that the bankruptcy court erred in placing too much weight on the word "judgment). It is a cardinal rule of statutory interpretation that the "starting point of any statutory analysis is the language of the statute." <u>Pa. Dep't of Envtl. Res. v. Tri-State Clinical Labs. Inc.</u>, 178 F.3d 685, 688 (3d Cir. 1999) (citations omitted). The Code defines a judicial lien as "obtained by judgment, levy, sequestration or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). The natural reading of the definition is that "judgment," "levy," and "sequestration" are enumerated examples of types of "legal or equitable process or proceeding[s]." Thus, for a lien to be judicial, there must be some judicial or administrative process or

proceeding that ultimately results in the obtaining of the lien. We implied that these terms are all related to such processes or proceedings in <u>Graffen</u>, stating that these "terms inherently related to court procedures or perhaps similar administrative proceedings." 984 F.2d at 96.

Here, this requirement is not fulfilled, as the lien obtained lacked any judicial process or proceeding. The surcharge statute grants the MVC a lien upon the docketing of the certificate of debt, which is then treated as having the effect of a civil judgment. In other words, the MVC obtains its lien not by any judgment, but rather by the ministerial act of docketing, which is treated as having the consequences of a judgment. In effect, the surcharge statute grants the MVC an expeditious path to secure a lien against the debtor's property, without having to engage in a lengthy and possibly costly judicial proceeding to obtain a judgment against the debtor. In our view, this statutorily created short-cut, in the absence of any meaningful judicial process or proceeding, renders the MVC's lien a lien that "arises solely by force of statute." 11 U.S.C. § 101(53). To hold otherwise would be to elevate form over substance and ignore the context in which "judgment" is used in 11 U.S.C. § 101(36).[6]

For this reason, we also reject Schick's reliance on the New Jersey tax lien statute, N.J. Stat. Ann. § 54:49-1, and construction lien statute, N.J. Stat. Ann. § 2A:44A-3. Schick rightly notes that the tax lien and construction lien statutes both contain language expressly granting a lien, whereas the surcharge statute contains no such language. For instance, the tax lien statute expressly grants a

---

[6]We note, hypothetically, that if the surcharge statute were to be repealed to divest the MVC of its expeditious remedy, then the MVC would have to proceed in court in a civil action to seek a judgment against Schick in order to secure a lien against the Debtor's property. In such a circumstance, there clearly would be the required judicial process or proceeding to transform the MVC's lien into a judicial lien. The fact that the New Jersey legislature chose to give the MVC a short-cut in obtaining its lien supports our holding that the MVC's lien is statutory, not judicial.

lien to the appropriate municipality or governmental entity: "Such [tax] debt, whether sued upon or not, shall be a lien on all property of the debtor . . . ." Accordingly, the tax lien statute confers to the appropriate agency a valid and enforceable right to collect unpaid taxes on the day of the assessment without any judicial action. Similarly, under the construction lien statute, a contractor who provides work, services, material or equipment pursuant to a contract is entitled to a lien for the value of the work or services performed, or materials or equipment furnished in accordance with the parties' contract. See N.J. Stat. Ann. § 2A:44A-3 ("Any contractor, subcontractor or supplier who provides work, services, material or equipment pursuant to a contract, shall be entitled to a lien for the value of the work or services performed, or materials or equipment furnished . . . . The lien shall attach to the interest of the owner in the real property."). As with the tax lien statute, the construction lien statute grants the contractor a lien for the value of the services rendered upon completion of the work without any judicial process or proceeding.

However, we do not believe that the fact that the surcharge statute lacks explicit lien-creating language, in contrast to the tax lien and construction lien statutes, is determinative in this matter. Like the tax lien and construction lien statutes, the surcharge statute contemplates that the MVC will have the right to recover unpaid motor vehicle surcharges from the debtor without any judicial action. The additional step required by the surcharge statute – the filing of the certificate of debt with the Clerk of the Superior Court – is merely a ministerial act intended to "perfect" the lien in favor of the MVC. As noted in Graffen, this ministerial act is only a "specified condition" for the creation of the statutory lien. Graffen, 984 F.2d at 97. We do believe that a statute that lacks express lien-creating language may confer a judicial lien where there is accompanying judicial process or proceeding. However, the surcharge statute, while lacking express lien-creating language, requires no such judicial action.[7]

_____

[7]We also note that, although the surcharge statute does not explicitly provide for a lien itself, that statute read in conjunction with § 2A:16-1 does explicitly provide for the lien. We do not see

-13-

Finally, we consider the Bankruptcy Court's reliance on our prior decision in <u>Gardner</u> as an example of where a lien was ruled judicial because it was "obtained by judgment." <u>See</u> <u>In re Schick</u>, 301 B.R. at 174; <u>see also</u> <u>In re James</u>, 304 B.R. at 136 (analogizing the MVC's lien to the lien at issue in <u>Gardner</u>). In <u>Gardner</u>, the Pennsylvania Department of Public Welfare required a debtor, as a condition of receiving public assistance, to sign reimbursement agreements. 658 F.2d at 108. These reimbursement agreements contained standard confession of judgment provisions, authorizing the entry of judgment against the recipient which would act as a lien against the recipient's real property. <u>Id.</u> Relying on the authority of <u>In re Ashe</u>, 669 F.2d 105 (3d Cir. 1982), we found in <u>Gardner</u> that a lien obtained by confessed judgment was a judicial lien and thus could not be avoided by the DPW.[8] <u>Gardner</u>, 685 F.2d at 108-09.

However, we do not believe that <u>Gardner</u> is applicable in this case or supports a conclusion that the surcharge statute creates a judicial lien. In <u>Graffen</u>, we noted that, for purposes of finding a judicial lien, in some instances a judicial proceeding may be <u>ex parte</u>, and we cited <u>Gardner</u> as involving such an example. <u>Graffen</u>, 984 F.2d at 96, n.7 (noting that "liens [in <u>Gardner</u>] were judicial as they were obtained by judgments entered upon a confession of judgment executed by the debtor"). However, in <u>Graffen</u>, we further noted that <u>Gardner</u> did not "stand for the

---

any reason why a lien should lose its statutory character simply because it is automatically created by the operation of two statutes, rather than one. Although 11 U.S.C. § 101(53) states that a statutory lien must arise "solely by force of a statute," we think it would be overly formalistic to interpret the use of the singular statute to bar statutory liens from being created by operation of more than one statute read in conjunction.

[8]"[A] confession of judgment . . . gives by consent, and without the service of process, a result which could otherwise be obtained only by process through a formal proceeding; it constitutes but one of the ways by which a person may be sued." <u>In re Ashe,</u> 712 F.2d at 872 (Becker, J., concurring and dissenting in part) (internal citation omitted).

-14-

proposition that liens requiring some administrative action to be perfected must be characterized as judicial liens." Graffen, 984 F.2d at 97. As noted above, the ministerial docketing required to "perfect" the MVC's lien is insufficient to render the lien to be judicial. In any event, the confession of judgment procedure bears no similarity to the ministerial docketing procedure at issue in the surcharge statute.

## IV. Conclusion

For the foregoing reasons, we determine that the MVC's lien is a statutory lien. Accordingly, the judgment of the District Court will be affirmed.

———