In the

# United States Court of Appeals
## For the Seventh Circuit

No. 21-1355

IN THE MATTER OF: MARCELLA M. MANCE,

*Debtor*,

CITY OF CHICAGO,

*Appellant*,

*v.*

MARCELLA M. MANCE,

*Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-01266 — **Andrea R. Wood**, *Judge*.

ARGUED OCTOBER 29, 2021 — DECIDED APRIL 21, 2022

Before SYKES, *Chief Judge*, and KANNE and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. This appeal presents a new chapter in a long-term effort by the City of Chicago to collect parking fines and other traffic fees from drivers who seek bankruptcy protection. Some of the City's tactics have worked and others have not. See *In re Fulton*, 926 F.3d 916, 924 (7th

Cir. 2019) (City's refusal to turn over vehicles to petitioners during bankruptcy proceedings violated automatic stay), vacated and remanded sub nom. *City of Chicago v. Fulton*, 141 S. Ct. 585 (2021); *In re Steenes*, 942 F.3d 834, 839 (7th Cir. 2019) (vehicular tickets incurred during course of a Chapter 13 bankruptcy are administrative expenses that must be paid in full).

The issue in this appeal is whether the City's possessory lien on a vehicle that it impounds due to unpaid tickets should be deemed a "judicial lien" or a "statutory lien" under the Bankruptcy Code. If the lien is judicial, all parties agree, it is avoidable in bankruptcy under 11 U.S.C. § 522(f). If the lien is instead deemed statutory, it is not avoidable under the same provision.

We agree with the bankruptcy and district courts that the City's possessory lien on impounded vehicles is properly classified as judicial and therefore avoidable. Part I lays out the stakes of this particular issue. Part II explains how judicial and statutory liens are defined in the Bankruptcy Code. Part III outlines the specific procedures the City must follow before it can impose a lien on an impounded vehicle. Part IV explains why a lien that flows from these procedures is judicial.

I.   *The Stakes*

This case may appear to be a technical dispute with modest stakes, but it's a test case that is important to the City and will affect many drivers. Outstanding debt for Chicago traffic tickets surpassed $1.8 billion last year.[1] On average, the City

---

[1] Melissa Sanchez, *Chicago Mayor Lori Lightfoot Proposes Further Traffic Ticket Reforms to Help Low-Income Motorists*, ProPublica (Sept. 22, 2021, 5:10

issues around three million tickets a year, and by one recent estimate, revenue from those tickets in 2016 exceeded a quarter of a billion dollars and constituted seven percent of the City's operating budget. Melissa Sanchez & Sandhya Kambhampati, *Driven into Debt: How Chicago Ticket Debt Sends Black Motorists into Bankruptcy*, ProPublica Ill. (Feb. 27, 2018), https://features.propublica.org/driven-into-debt/chicago-ticket-debt-bankruptcy.

As the dockets in this court and the Northern District of Illinois show, aggressive ticketing practices may help push many drivers into bankruptcy. *Id.* (explaining that "[p]arking, traffic and vehicle compliance tickets prompt so many bankruptcies the court [in Chicago] [led] the nation in Chapter 13 filings" at the time); see also *Table F-2—Bankruptcy Filings (December 31, 2019)*, U.S. Courts, https://www.uscourts.gov/statistics/table/f-2/bankruptcy-filings/2019/12/31 (last visited Apr. 21, 2022) (Northern District of Illinois led nation in non-business Chapter 13 filings with 15,851 cases in 2019). Even with recent reforms to ticketing practices, bankruptcy filings remain high by comparison to other districts. *Table F-2—Bankruptcy Filings (December 31, 2021)*, U.S. Courts, https://www.uscourts.gov/statistics/table/f-2/bankruptcy-filings/2021/12/31 (last visited Apr. 21, 2022) (in 2021 the Northern District of Illinois had the second most non-business Chapter 13 filings (5,198)).

When a vehicle owner's parking-ticket debt accumulates, the City has the legal right to impound the vehicle and can eventually sell the vehicle to help pay off the debt. If the

---

PM), https://www.propublica.org/article/chicago-mayor-lori-lightfoot-proposes-further-traffic-ticket-reforms-to-help-low-income-motorists.

impoundment lien can be discharged in bankruptcy, however, the owner may be able to recover her vehicle through the bankruptcy court. Classifying an impoundment lien as judicial or statutory can make the difference between, on one hand, allowing drivers to avoid a debt and denying the City the sums owed, and on the other hand the owner permanently losing the vehicle and putting more money in the hands of the City.

The foundation for this particular issue was laid in 2016. See *Fulton*, 926 F.3d at 920. The City Council passed a new ordinance that granted the City a lien on impounded vehicles for ticket debts. Municipal Code of Chicago ("M.C.C.") § 9-92-080(f). Once a driver incurs the needed number of outstanding tickets and final liability determinations, the City is authorized to impound her vehicle and to attach a possessory lien. The amount of the lien is based on how much the driver owes in unpaid traffic tickets, plus additional fees. § 9-100-120(d)(2).

Many drivers cannot afford to pay their outstanding tickets and fees, let alone the liens imposed on their cars through this process. As a result, some drivers declare bankruptcy and seek to avoid them. Debtor-appellee Marcella Mance, for instance, incurred several unpaid parking tickets and saw her car impounded and subject to a possessory lien that totaled $12,245, more than four times her car's value. Facing this liability with a monthly income of $197 in food stamps, Mance filed for bankruptcy under Chapter 7 and sought to avoid the lien under 11 U.S.C § 522(f). When a vehicle owner files for bankruptcy through Chapter 7, she can avoid a lien under § 522(f) if the lien qualifies as judicial and its value exceeds the value of her exempt property (in this case, her car).

Conversely, if the lien is statutory, it is not avoidable under the same provision.[2]

The bankruptcy and district courts concluded that the lien was judicial and avoidable. Both courts reasoned that the lien was tied inextricably to the prior adjudications of Mance's parking and other infractions, so it did not arise solely by statute, as the Bankruptcy Code requires for a statutory lien. As the district court explained in its opinion in this case: "There is simply no way to disaggregate the final determinations of liability from the lien resulting from immobilization. … Without the requisite number of judgments, the City would have no right to immobilize the vehicles and no liens could arise." *City of Chicago v. Howard*, 625 B.R. 384, 390 (N.D. Ill. 2021).[3]

II. *Lien Definitions in the Bankruptcy Code*

The classification of a lien under the Bankruptcy Code is a question of law that we review de novo. *In re Willett*, 544 F.3d 787, 790 (7th Cir. 2008). The Code sorts liens into three mutually exclusive categories—statutory liens, judicial liens, and security interests. *In re Financial Oversight & Management Board for Puerto Rico*, 899 F.3d 1, 10 (1st Cir. 2018); *In re Wigfall*, 606 B.R. 784, 786–87 (Bankr. N.D. Ill. 2019); see also S. Rep. No. 95-989, at 25 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 5811 ("Those three categories are mutually exclusive and are [exhaustive] except for certain common law liens."). Only the first two are relevant here. The parties agree that Mance

---

[2] These figures come from Mance's Chapter 7 bankruptcy petition, i.e., Form 106. We accept Mance's declarations for the purposes of this appeal.

[3] Mance's case was consolidated with that of another debtor (Cupree Howard) in the district court and initially on appeal. We dismissed Howard's appeal as moot before oral argument.

satisfies all the requirements for discharge under 11 U.S.C. § 522(f) if her lien is considered judicial, so the classification is decisive.

A. *The Statutory Text*

We begin our analysis with the statutory text. The Bankruptcy Code defines judicial and statutory liens in 11 U.S.C. § 101. Here is each definition in full:

> (36) The term "judicial lien" means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding.
>
> …
>
> (53) The term "statutory lien" means lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.

§ 101(36), (53).

Both definitions focus on the events (or the lack thereof) that precede creation of the lien. The two definitions use distinct language to describe how the two different types of liens arise. We see this in the use of "arising solely" for statutory liens versus "obtained by" for judicial liens. "Solely" seems clear enough and signals that prior legal proceedings leading to a lien would exclude the lien from the category of statutory liens. The definition of a judicial lien—"obtained by judgment, levy, sequestration, or other legal or equitable process

or proceeding," § 101(36)—has an "element of causation inherent in the phrase 'obtained by.'" See *Field v. Mans*, 516 U.S. 59, 66 (1995) (interpreting § 523(a)(2), which prohibits discharge of certain debts "obtained by … false pretenses, a false representation, or actual fraud"). The statutory definition of a judicial lien indicates that the term applies when the lien is caused by or results from the broad categories of process identified in the latter part of the definition. These textual differences are noted in the history of the Bankruptcy Reform Act of 1978. The House and Senate reports on the Act explained: "A statutory lien is only one that arises automatically, and is not based on an agreement to give a lien or on judicial action." H.R. Rep. No. 95-595, at 314 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6271; S. Rep. No. 95-989, at 27, as reprinted in 1978 U.S.C.C.A.N. at 5811; see also 5 Collier on Bankruptcy ¶ 545.01 (16th ed. 2021).

Under these definitions, classification of a lien depends on the events, if any, that must occur before the lien attaches. *In re Schick*, 418 F.3d 321, 324 (3d Cir. 2005) ("The relevant inquiry is to determine the nature of the [] lien, i.e., whether it arises solely by force of statute, or whether it results from some type of judicial process or proceeding."); see also 2 Collier on Bankruptcy ¶ 101.53 ("[A] judicial lien arises only by virtue of judicial proceedings in the absence of which there would not be such a lien. The statutory lien by definition arises without any judicial proceeding." (footnote omitted)).

B. *Illustrations*

Common examples of statutory and judicial liens are generally consistent with this focus on the prior events needed for the lien to arise and attach to property. Take mechanics' liens first, often cited as an example of a statutory lien. See, e.g.,

*Schick*, 418 F.3d at 324; *In re Cunningham*, 478 B.R. 346, 350 (Bankr. N.D. Ind. 2012) ("Case law throughout the country has routinely determined that a mechanic's lien, or similar liens arising by means of a state's statutory enactment, are at their base statutory liens."); see also *id.* at 351 (collecting cases); H.R. Rep. No. 95-595, at 314, as reprinted in 1978 U.S.C.C.A.N. at 6271 (listing mechanics' liens in the examples of statutory liens, as well as materialmen's liens, warehousemen's liens, and tax liens). In simple terms, a statute provides a mechanic a lien on improved property as soon as payment for the mechanic's work on the property is due and goes unpaid. The mechanic need not go to a judge to secure a lien; rather, the lien arises solely by statute once the condition—a lack of payment—occurs. A mechanic's lien may be perfected by filing the lien with a county clerk or similar official, but that filing is not considered a "legal or equitable process or proceeding" within the definition of a judicial lien. 11 U.S.C. § 101(36); see *Schick*, 418 F.3d at 326, citing *In re Fennelly*, 212 B.R. 61, 65 (D.N.J. 1997) ("The mere ministerial act of recording the lien does not create the requisite legal process or proceeding required to be a judicial lien."). The critical point is that a mechanic's lien attaches to the property automatically when the debtor fails to make a payment for the services due. Accord, *Wigfall*, 606 B.R. at 787. No judicial or similar process is needed.[4]

---

[4] Perfection is necessary for the statutory lien's continued effectiveness and protection against other creditors. It also has implications under 11 U.S.C. § 545, which allows a bankruptcy trustee to avoid certain statutory liens. But the fact that a lien must be perfected does not transform it into a judicial lien. See 2 Collier on Bankruptcy ¶ 101.53 ("[M]erely because [statutory liens] require some form of judicial filing for their perfection against other creditors or continued effectiveness, they are not

Contrast this example of a statutory lien with the textbook judicial lien: a court-ordered money judgment. There are several ways a dispute could make its way into a court and result in a money judgment. But before the lien can arise at all, a court must enter judgment for the winning creditor. That party then records it as a lien on the losing party's property. Because the lien is "obtained by" a court proceeding, it is considered judicial. 2 Collier on Bankruptcy ¶ 101.36; see also *Schick*, 418 F.3d at 328 ("[F]or a lien to be judicial, there must be some judicial or administrative process or proceeding that ultimately results in the obtaining of the lien.").

As we will see next, Chicago's impoundment lien in this case lies somewhere in between these easy illustrations. We find decisive the substantial quasi-judicial proceedings needed for the City to obtain an impoundment lien. The City's possessory lien thus did not arise "solely" by statute.

III. *The City's Lien Program*

To classify the City's impoundment lien, we examine how it arises or is obtained, beginning with unpaid tickets and continuing through the process of impoundment and attachment of the lien.

First, the owner must accrue the required number of traffic violations and final determinations. A car may be impounded only after an owner has three or more "final determinations of liability," or two final determinations that have been outstanding for more than a year, "for parking, standing,

---

transformed into judicial liens. While the filing of the lien may determine whether it is perfected to the extent that it may not be avoided by the trustee under section 545, it does not transmute a statutory lien into a different kind of lien." (footnotes omitted)).

compliance, automated traffic law enforcement system, or automated speed enforcement system violation[s]." M.C.C. § 9-100-120(b).

The underlying traffic violation undergoes an administrative process before it turns into a final determination of liability. First, a police officer or other official observes and records a traffic or parking violation. The official then gives the operator of the vehicle a notice of the violation (e.g., by hand or by placing it on the vehicle). § 9-100-030(b)(i)–(ii). If, however, the operator drives away before the official can serve the notice, the City mails the owner of the vehicle a notice of the traffic violation. § 9-100-030(b)(iii). Alternatively, an automated speed or traffic system records a violation and the City sends a notice to the registered owner. § 9-100-045.

The owner can contest the charged violation in an in-person proceeding or by writing. §§ 9-100-050, -055, -070, -080. If the owner loses or fails to contest the violation, a determination of liability is entered. § 9-100-090. The owner can then file an appeal under the Illinois Administrative Review Law. *Id.*; see also *Van Harken v. City of Chicago*, 713 N.E.2d 754, 759 (Ill. App. 1999). If she loses on appeal or fails to contest the liability determination, the City obtains a "final determination." § 9-100-100. In *Fulton*, we concluded that these final determinations of liability amounted to "money judgments." See 926 F.3d at 930–31, vacated on other grounds, 141 S. Ct. 585.

At that point, the owner must pay the fine for the violation. § 9-100-100(b). "The fines for violations of the City's Traffic Code range from $25 (*e.g.*, parallel parking violation) to $500 (*e.g.*, parking on a public street without displaying a wheel tax license emblem)." *Fulton*, 926 F.3d at 920, citing § 9-100-

020(b)–(c). These fines can grow quickly. "Failure to pay the fine within twenty-five days automatically doubles the penalty" in most cases. *Id.*, citing § 9-100-050(e).

If the fines go unpaid, the next enforcement step for the City is impoundment. That step requires more legal process. The City must issue notice of the impending vehicle immobilization to the owner. § 9-100-120(b). The owner then has twenty-one days to either pay the fines or petition for a hearing and appear in person to prove that she is not liable for the outstanding tickets. If the owner fails to file a timely petition or if her petition is denied, a final determination of eligibility is entered.

After such a determination of liability and eligibility for impoundment, the City may physically immobilize the car (with a "boot," for example). § 9-100-120(c). If the owner does not obtain release of the immobilizing device within twenty-four hours or request additional compliance time, the City can finally tow the car to an impoundment facility. *Id.* When the vehicle is immobilized or impounded, the outstanding ticket debt becomes a lien on the vehicle: "Any vehicle impounded by the City or its designee shall be subject to a possessory lien in favor of the City in the amount required to obtain release of the vehicle." § 9-92-080(f); § 9-100-120(j) (same for immobilized vehicles).[5]

---

[5] The City impounded and sold nearly 50,000 cars from 2011 to 2019. Elliott Ramos, *Chicago Seized and Sold Nearly 50,000 Cars Over Tickets Since 2011, Sticking Owners with Debt*, WBEZ Chi. (Jan. 7, 2019, 5:01 AM), https://www.wbez.org/stories/chicago-seized-and-sold-nearly-50000-cars-over-tickets-since-2011-sticking-owners-with-debt/1d73d0c1-0ed2-4939-a5b2-1431c4cbf1dd.

Turning to the details of this case, at the time of appellee Mance's bankruptcy filing, the City's lien on her vehicle totaled $12,245 on a car allegedly worth $3,000. The amount of the lien is based on the amount of the outstanding tickets, the fees accumulated from storage and towing costs, and even attorney fees incurred by the City in the immobilization process, among other costs. § 9-100-120(d)(2).[6]

IV. *Classification of the City's Lien*

   A. *The Lien Is "Obtained by" Adjudicating the Traffic Violations*

The very last step of the lien attachment is automatic. Under the terms of the city ordinance, the lien arises upon impoundment, without further action by a judge or quasi-judicial official. On that basis, the City contends the impoundment lien is a statutory lien, asserting that it arises "solely" by statute. Like our colleagues on the bankruptcy and district courts, however, we see the issue differently. Under the statutory definitions of the two types of liens, we do not think we can ignore all the prior legal process that must occur before the City's possessory lien arises. The lien is "obtained by … other legal or equitable process or proceeding," 11 U.S.C. § 101(36), in that the lien arises from and is based upon the prior quasi-judicial adjudications and money judgments that determine the lien's validity and amount. The lien is judicial and avoidable in bankruptcy.

---

[6] The City offers various repayment plan options for eligible drivers that might eliminate some of those fees. See § 9-100-120(d)(1); see also §§ 9-100-160 (installment payment plans), -170 (Clear Path Relief Pilot Program). The parties have not indicated to the court that Mance is enrolled in any of those programs.

The City asks us to treat this prior process as irrelevant. The City relies on the language "shall be subject to a possessory lien" in the ordinance. The City treats the needed number of tickets, final adjudications, and later impoundment as mere "conditions" that trigger the lien. In the City's view, those conditions should have no bearing on the classification of the lien because they do not govern how the lien "arises."

The City's narrow focus on only the very last step leading to attachment of an impoundment lien is not consistent with the statutory definition of a judicial lien. A judicial lien is not a statutory lien, "whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute." 11 U.S.C. § 101(53). This language makes clear that the fact that a lien resulted from a process that is "purely a creature of statute" is not sufficient to classify the lien as statutory. *In re Weatherspoon*, 101 B.R. 533, 535 (Bankr. N.D. Ill. 1989) (citation omitted). Put differently, "[t]he fact that a statute describes the characteristics and effects of a lien does not by itself make the lien a statutory lien." 2 Collier on Bankruptcy ¶ 101.53. That description fits the City's impoundment lien in this case. A statute (the ordinance) authorizes the lien and describes its characteristics and effects, but we must still consider whether the lien arises "solely by force of a statute on specified circumstances or conditions." § 101(53).

Under both definitions, the relevant inquiry is not whether a statute authorizes or governs the lien but what is necessary for the lien to arise. If the lien requires a "judgment, levy, sequestration, or other legal or equitable process or proceeding," the lien is judicial. If the lien arises "solely" by statute once specific conditions are met, the lien is statutory.

In the case of a Chicago impoundment lien, without the judicial or quasi-judicial procedures needed for final determinations for each traffic violation and without the quasi-judicial impoundment procedures, the City could not impose a lien on the indebted driver's vehicle. While the lien is authorized by and defined by statute, the City's possessory lien does not arise "solely" by statute.

To be sure, as Mance acknowledged at oral argument, liens on some impounded vehicles should be treated as statutory liens. If a driver has committed a violation under M.C.C. § 9-92-030, such as blocking an alleyway, obstructing traffic, parking in a "tow zone," or the like, the vehicle can be towed on the spot, without any prior judicial process. *Id.* The City then sends the vehicle owner notice after the fact. § 9-92-070. When a vehicle is towed for one of these violations, it is also subject to a lien. § 9-92-080(f) ("Any vehicle impounded by the City or its designee shall be subject to a possessory lien in favor of the City in the amount required to obtain release of the vehicle."); see also § 2-14-132(*l*) (same). Such violations lead to immediate impoundment liens that do not require advance notice to drivers or any other quasi-judicial procedures before they can be imposed. Instead, a car is automatically impounded upon a violation and subject to a lien.[7]

---

[7] In the case of a violation that results in an immediate tow, the city must offer adequate post-deprivation procedures to conform with due process. See *Miller v. City of Chicago*, 774 F.2d 188, 192–96 (7th Cir. 1985) (City not required to provide notice to owners before towing stolen vehicles to satisfy due process); *Sutton v. City of Milwaukee*, 672 F.2d 644, 645–46, 648 (7th Cir. 1982) (pre-towing notice and opportunity to be heard not required to tow illegally parked cars, but adequate post-deprivation procedures are needed to provide due process); see also *Gable v. City of*

That automatic process is quite different from what happened here. For Mance, several legal proceedings had to be completed before impoundment. Vehicle owners who incur liens like Mance's therefore face judicial liens and can avoid them under 11 U.S.C. § 522(f). Vehicle owners whose violations resulted in immediate impoundment, by contrast, face statutory liens and cannot avoid them under the same provision.

Next, the City argues that if we agree with appellee Mance, we will create a circuit split with the Third Circuit's decision in *In re Schick*, 418 F.3d 321 (3d Cir. 2005). We are not convinced. There is a critical difference between the processes leading to the liens in the two cases.

*Schick* concluded that a lien held by the New Jersey Motor Vehicles Commission was a statutory lien. Under New Jersey law, a vehicle owner who committed a traffic violation faces potential surcharges in various situations, such as reaching a certain number of violation points or having been convicted of refusing to take a breathalyzer test, among other examples. The amount of the surcharges was dictated by "statute and administrative regulations." 418 F.3d at 324. If a driver failed to pay the surcharges, the Commission was entitled to a lien on the driver's property in the amount of the surcharges and interest. The Third Circuit concluded that such a lien held by the Commission was statutory and therefore not avoidable under 11 U.S.C. § 522(f).

---

*Chicago*, 296 F.3d 531, 539–40 (7th Cir. 2002) (due process rights not violated when City deprived plaintiffs of impounded vehicles because City was not deliberately indifferent and adequate post-deprivation remedies were available).

The statutory scheme analyzed in *Schick* was markedly different from the impoundment process leading to Chicago's lien. The New Jersey statute pertained to only the surcharges, not the underlying vehicle violations. This bifurcated structure contributed to the court's view that "the underlying traffic proceeding charging the driver with a motor vehicle offense [was] too remote to constitute the required judicial process or proceeding necessary to find a judicial lien." 418 F.3d at 326. The underlying proceeding therefore bore "*no relation* to the creation of the lien in favor of the [Commission], which instead [arose] as a result of the filing of the certificate of debt and its docketing by the Clerk of the Superior Court." *Id.* (emphasis added).

Here, by contrast, the statutory structure does not separate the underlying vehicle violation and any fees imposed after the final determinations of the tickets, let alone the impoundment process. These steps are all tied together. Unlike the situation in *Schick*, Chicago's administrative structures for challenging tickets and pending impoundments are not too far removed from the impoundment lien. They are essential prerequisites for a valid impoundment lien, and they determine the amount of the lien.

In *Schick* the amount of the surcharge—and therefore the amount of the lien—was "set forth either in the statute or administrative regulation and [was] *not determined by the underlying proceeding against the driver*." 418 F.3d at 326 (emphasis added). The opposite is true here. The amount of the Chicago impoundment lien is determined precisely in and by the underlying proceedings. Indeed, to secure release, the driver must pay immobilization and impoundment costs, as well as "all amounts, including any fines, penalties, administrative

fees …, if any, and related collection costs and attorney's fees … remaining due on each final determination for liability issued to the owner." M.C.C. § 9-100-120(d)(2). The City says correctly that the total amount of the lien is not limited to the underlying traffic fees, but all of the additional charges pertain to and result directly from the quasi-judicial processes leading up to the lien. In this respect, the situation here is similar to money judgments, which routinely include interest, court costs, and sometimes attorney fees and other associated costs, yet are considered judicial despite these tacked-on fees because the resulting liens do not arise "solely" by statute. The same is true here. The additional fees do not eliminate the link to the underlying traffic violations and adjudications. They strengthen it.

B. *Tax Liens*

The City also argues that adopting Mance's position will call the classification of tax liens into question. Congress included tax liens in its examples of statutory liens in the legislative history of the Bankruptcy Code. H.R. Rep. No. 95-595, at 314, as reprinted in 1978 U.S.C.C.A.N. at 6271 ("Tax liens are also included in the definition of statutory lien."). The City contends, however, that federal tax liens result from judicial and quasi-judicial processes (under 26 U.S.C. §§ 6212(a), 6213(a), 6214(a), and 7482) that are similar to the processes leading to a Chicago impoundment lien. If these procedures must be followed before imposing a federal tax lien, yet everyone acknowledges that a tax lien is statutory, the City asks, how could our lien be judicial based on similar prior procedures?

Tax liens are unquestionably statutory. E.g., *Financial Oversight & Management Board*, 899 F.3d at 11; *Schick*, 418 F.3d

at 324; *IRS v. Diperna*, 195 B.R. 358, 360 (E.D.N.C. 1996); *In re O'Neil*, 177 B.R. 809, 811 (Bankr. S.D.N.Y. 1995). Our decision does not call this classification into question. We are merely evaluating the text of statutory provisions also provided by Congress to determine where the City's lien best fits under those definitions. Classifying the City's lien as judicial flows directly from the text. Congress is entitled to single out a particular category of liens and classify it accordingly. We do not disturb that prerogative or conclusion with this opinion.

Because Chicago's impoundment lien on Mance's vehicle did not arise solely by force of statute, the lien is a judicial lien for purposes of Mance's bankruptcy.

AFFIRMED.